DECISION
{¶ 1} Relator, Howard Saunders, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate orders denying relator's request for temporary total disability ("TTD") compensation, and to enter an order finding he is entitled to said compensation. Alternatively, relator requests a writ of mandamus ordering the commission to reconsider his request for TTD compensation.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. On February 27, 2008, the magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.)
 {¶ 3} Relator has filed objections to the magistrate's decision, arguing that: (1) the magistrate erred in concluding the commission did not abuse its discretion in finding relator voluntarily abandoned his former position of employment; (2) the magistrate erred in concluding the commission did not abuse its discretion in failing to subject the employer's termination of relator's employment to heightened scrutiny; and (3) the magistrate misunderstood relator's argument that the Staff Hearing Officer ("SHO") applied an incorrect legal standard in considering relator's allegations of fraud.
 {¶ 4} Relator's first two objections raise the same arguments considered and rejected by the magistrate. Upon review, we agree with the magistrate's reasoning and analysis that there exists some evidence to support a finding of voluntary abandonment, *Page 3 
and that relator has not demonstrated the commission failed to carefully scrutinize the totality of the circumstances regarding relator's departure from his employment.
 {¶ 5} Relator also contends the magistrate failed to address his argument that the SHO applied an incorrect legal standard in considering a request for continuing jurisdiction based upon alleged fraud by the employer. Relator argued before the magistrate that the SHO, in a May 2007 order, failed to properly consider his allegation that the employer presented material misrepresentations in a prior hearing before the SHO on September 1, 2005. More specifically, relator argued that the employer, during the 2005 hearing, made false and deceptive statements that relator was terminated for insubordination on May 16, 2005, and that such statements were made to induce the commission to find him ineligible for TTD compensation. In support, relator cited correspondence between the employer's human resource director and personnel for the Ohio Bureau of Workers' Compensation as evidence that relator was terminated later than the date asserted by the employer. Relator argues that the SHO failed to properly consider his allegation of fraud in the May 2007 order, and instead rejected his request to invoke continuing jurisdiction on the basis that the evidence could have been discovered and brought to the attention of the commission at the 2005 hearing.
 {¶ 6} Relator's contention that the SHO failed to address whether the employer perpetrated a fraud is unpersuasive. In the May 2007 order, the SHO specifically found "insufficient evidence to establish that the criteria for civil fraud has been met with regard to the employer's contention of the termination." While the SHO further noted, "[i]naddition," that all of the evidence "on file now was on file at the time of the original Staff Order," the language of the order does not support relator's assertion that the *Page 4 
commission's sole basis for declining to exercise continuing jurisdiction was that evidence in support could have been discovered at the time of the earlier hearing. (Emphasis added.) Further, we agree with the magistrate that the correspondence involving the employer's human resource director does not mandate an inference that the employer made fraudulent misrepresentations in an effort to deny relator TTD compensation. Thus, we also agree with the magistrate's conclusion that the commission did not abuse its discretion in finding relator failed to present sufficient evidence of fraud to warrant the commission's exercise of its continuing jurisdiction.
 {¶ 7} Following an examination of the magistrate's decision, as well as an independent review of the evidence, we overrule relator's objections to the magistrate's decision. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and deny relator's request for a writ of mandamus.
Objections overruled; writ denied.
PETREE and SADLER, JJ., concur.
 APPENDIX A *Page 5 MAGISTRATE'S DECISION IN MANDAMUS {¶ 8} Relator, Howard Saunders, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its orders denying relator's request for temporary total disability ("TTD") compensation and ordering the commission to find that he is entitled to that *Page 6 
compensation. In the alternative, relator seeks a writ of mandamus ordering the commission to reconsider his request for TTD compensation.
Findings of Fact: {¶ 9} 1. Relator sustained a work-related injury on April 13, 2005, and his claim was ultimately allowed for the following conditions: "sprain of right knee leg not otherwise specified; tear medial meniscal right knee current."
 {¶ 10} 2. Relator saw his doctor the day after the injury and ultimately was referred for an MRI. The MRI revealed the medial meniscus tear.
 {¶ 11} 3. Walt Sberna, a site superintendent for Cornerstone Foundation Systems ("employer"), stated in an affidavit that relator was able to perform his job as a foreman after the injury and was able to restrict his activity as necessary.
 {¶ 12} 4. On May 13, 2005, Mr. Sberna instructed relator to operate a bulldozer. Relator refused to do so.
 {¶ 13} 5. When relator returned to work on May 16, 2005, he was told to turn in his equipment and sign-up for unemployment.
 {¶ 14} 6. On May 20, 2005, the employer mailed relator a letter confirming his termination for refusing to perform his job duties.
 {¶ 15} 7. At the time of his termination, relator had not provided the employer with a copy of any medical restrictions. Relator testified that he informed Mr. Sberna that he had certain restrictions following his injury, but relator admits that this agreement was not reduced to writing. Relator testified that, pursuant to the understanding between him and Mr. Sberna, operating the bulldozer would have violated their agreement as to his work restrictions. *Page 7 
 {¶ 16} 8. The record contains an unsigned and undated work ability form as well as a June 14, 2005 certification from relator's treating physician Rick Giovannone, D.O. The certification and the work ability form both provide the following restrictions: relator was released to return to work provided that there be no lifting over 25 pounds, as well as no bending, stooping or squatting, and no prolonged walking or standing over two hours.
 {¶ 17} 9. There is no medical evidence in the record indicating that relator was restricted in any manner regarding the use of foot controls or, specifically, operating machinery.
 {¶ 18} 10. Relator sought TTD compensation beginning May 4, 2005.
 {¶ 19} 11. Initially, the Ohio Bureau of Workers' Compensation ("BWC") granted relator's request for TTD compensation beginning May 14, 2005.
 {¶ 20} 12. The employer appealed and the matter was heard before a district hearing officer ("DHO") on July 22, 2005. The DHO determined that the BWC had properly awarded TTD compensation beginning May 14, 2005.
 {¶ 21} 13. The employer appealed and the matter was heard before a staff hearing officer ("SHO") on September 1, 2005. At this hearing, the employer argued that relator had voluntarily abandoned his employment when he refused to operate the bulldozer as directed by his supervisor. In support of this argument, the employer submitted the following: (a) a copy of relator's job application, signed by relator on January 22, 2004, and containing the following language:
 I agree that either party may terminate the employment relationship, with or without cause, at any time, and I further agree that this arrangement may only be altered in writing directed to me personally and signed by the president of the firm. I agree that I shall be bonded by the other rules, *Page 8 
policies, regulations and terms and conditions of employment of the firm as they are from time to time changed, and no additional obligations can be imposed on the firm except those which have been acknowledged in writing, by the president or his designated representatives. * * *
(b) an employee acknowledgement form indicating that relator had been provided with a copy of the employee handbook, signed by relator on January 22, 2004, which provided:
 * * * I have entered into my employment relationship * * * voluntarily and acknowledge that there is no specified length of employment. * * * [E]ither I or [the employer] can terminate the relationship at will, with or without cause, at any time, so long as there is no violation of applicable federal or state law.
 Since the information, policies, and benefits described here are necessarily subject to change, I acknowledge that revisions to the handbook may occur[.] * * * I understand that revised information may supersede, modify, or eliminate existing policies. * * *
 Furthermore, I acknowledge that this handbook is neither a contract of employment nor a legal document. I understand and acknowledge that the Company reserves the right and full discretion to change or eliminate any policies or procedures at any time for any or no reason and with or without notice. * * *
 I have received the handbook, and I understand that it is my responsibility to read and comply with the policies contained in this handbook and any revisions made to it.
And (c) the copy of a portion of the handbook, the effective date of which was June 1, 2004, which provided:
 To ensure orderly operations and provide the best possible work environment, Cornerstone Foundation Systems expects employees to follow rules of conduct that will protect the interests and safety of all employees and the organization. *Page 9 
 It is not possible to list all the forms of behavior that are considered unacceptable in the workplace. The following are examples of infractions of rules of conduct that may result in disciplinary action, up to and including termination of employment:
 * * *
 Insubordination (refusal to follow any order given by an employee's supervisor or management, or the refusal or failure to perform work assigned).
 {¶ 22} 14. In response to the employer's argument that he had voluntarily abandoned his employment, relator maintained that he had a written agreement with the employer acknowledging his physical limitations and that operating a bulldozer would have required him to perform duties outside the scope of his abilities as outlined in the agreement. Relator did not produce a copy of this agreement and did not present any medical evidence verifying that he was unable to operate a bulldozer.
 {¶ 23} 15. Ultimately, the SHO vacated the prior DHO order and denied relator's request for TTD compensation after finding that the medical restrictions relator provided were not dispositive of whether or not he could operate a bulldozer, that the employer provided evidence of the written handbook, and that relator admitted that he refused to operate the bulldozer and was terminated.
 {¶ 24} 16. Thereafter, relator submitted a request for reconsideration and requested that the commission exercise continuing jurisdiction over the matter based on mistakes of fact contained in the SHO's order. Specifically, relator argued the order was obtained by the employer through fraudulent means. Relator argued that the affidavits and testimony relied upon by the SHO contained material misrepresentations of fact regarding the date of relator's alleged termination, the knowledge the employer had of *Page 10 
relator's work restrictions prior to his alleged termination, and the existence of the agreement between relator and the employer concerning his ability to work. Additionally, relator argued that the aforementioned allegations were supported by newly discovered evidence which he had obtained after he became represented by an attorney. (Relator acted pro se through the September 1, 2005 SHO hearing.) Relator submitted notes from the BWC which he maintained unequivocally established that the employer was well aware of his restrictions at the time that he was fired. The first note was from a contact with the employer on May 9, 2005. At that time, the BWC employee making the call indicated that Tami Szczerbiak, Human Resources and Safety Director for the employer, stated that relator had "been working [the] whole time, and they have him on restricted duty." The record also contains the contact with the employer on May 18, 2005, wherein Ms. Szczerbiak again indicated that the employer had "been attempting to accommodate restrictions," and that claimant "was assigned a job and then told [the employer] that he was unable to [do] it." Apparently, Ms. Szczerbiak requested a "written copy of restrictions in order to determine if job assigned is within [relator's] restrictions." Relator also submitted a letter signed by Christopher J. Creps, a co-worker of relator. Mr. Creps stated relator told him about the agreement with the employer to limit his work following the injury, and further indicated that Mr. Sberna told him that relator would only be supervising, doing daily paperwork, and any running around.
 {¶ 25} 17. The matter was heard before a DHO on March 13, 2007, and relator's request for reconsideration was denied. The DHO concluded that, on September 1, 2005, the SHO was in a position to judge the weight and credibility of the evidence presented and that there was no showing that the information available from Mr. Creps *Page 11 
would not have been available had due diligence been performed. Further, the DHO noted that counsel repeatedly argued that relator had been unrepresented at the time of the September 2005 SHO hearing and that this had to be taken into consideration. The DHO noted that relator had been present at all the hearings and that he had the opportunity to testify and rebut any information provided by the employer. Further, the DHO concluded that relator did not establish that there had been a fraud perpetrated. Instead, the DHO found that the information was divergent and created a dispute which the SHO weighed and considered in resolving the matter.
 {¶ 26} 18. Relator appealed and the matter was heard before an SHO on April 27, 2007. The SHO also denied relator's request for reconsideration.
 {¶ 27} 19. Relator's further appeal was refused by order of the commission mailed May 24, 2007.
 {¶ 28} 20. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 29} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry *Page 12 Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 30} In this mandamus action, relator makes two arguments. First, relator argues that the SHO who denied relator's request for TTD compensation failed to apply a heightened level of scrutiny to the totality of the circumstances. Relator points out the following evidence which he believes the SHO failed to adequately consider: the January 24, 2004 signature page signed by relator does not include "insubordination" as a terminable offense; the rule concerning "insubordination" was not put into effect until June 1, 2004, approximately five months after relator was hired; and the employer failed to provide any evidence that relator ever received a copy of the June 1, 2004 revision to the rules. In his second argument, relator challenges the commission's decision not to exercise its continuing jurisdiction. Relator asserts that the record contains material misrepresentations regarding his termination. Specifically, relator contends that the notes from the BWC prove that the employer knew that relator had restrictions, thought that relator was working on May 17, 2005, and that he was off work as of May 22, 2005 while the employer was awaiting updated restrictions. For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.
 {¶ 31} Relator first argues that the commission failed to apply a heightened level of scrutiny when considering the employer's argument that he had voluntarily retired. TTD compensation awarded pursuant to R.C. 4123.56 has always been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. State ex rel. Ramirez v. Indus. Comm. (1982), *Page 13 69 Ohio St.2d 630. When an employee's own actions, for reasons unrelated to the injury, preclude him from returning to his former position of employment, he is not entitled to TTD benefits, since it is the employee's own actions, rather than the injury, that precludes a return to the former position. See State ex rel. Jones Laughlin Steel Corp.v. Indus. Comm. (1985), 29 Ohio App.3d 145. When determining whether an injury qualifies for TTD compensation, the court utilizes a two-part test. The first part of the test focuses on the disabling aspects of the injury. The second part of the test determines if there are any factors, other than the injury, which would prevent claimant from returning to his former position of employment. See State ex rel. Ashcraft v. Indus.Comm. (1987), 34 Ohio St.3d 42. However, only a voluntary abandonment precludes the payment of TTD compensation. State ex rel. RockwellInternatl. v. Indus. Comm. (1988), 40 Ohio St.3d 44. As such, voluntary abandonment of the former position of employment can, in some instances, bar eligibility for TTD compensation.
 {¶ 32} A firing can constitute a voluntary abandonment of the former position of employment when the firing is a consequence of behavior which claimant willingly undertook. See State ex rel. Watts v.Schottenstein Stores Corp. (1993), 68 Ohio St.3d 118. The rationale for this is that a person is deemed to tacitly accept the consequences of their voluntary acts.
 {¶ 33} In State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.
(1995), 72 Ohio St.3d 401, the court characterized a firing as "voluntary" where that firing is generated by the employee's violation of a written work rule or policy which: (1) clearly defined the prohibited conduct; (2) had been previously identified by the employer as a dischargeable offense; and (3) was known or should have been known by the employee. *Page 14 
 {¶ 34} In the present case, the employer submitted a copy of relator's employment application, and the employee acknowledgement form from the employee handbook, both of which relator signed on January 22, 2004. On both those forms, the employer provided specific language to notify employees that the rules set out in the employee handbook may be changed and, relator signed a form indicating that he understood that he would be bound by other rules, policies, regulations and terms and conditions of employment as are from time-to-time changed. The employer also provided a copy of the policy on insubordination which was put into effect June 1, 2004, approximately five months after relator was hired.
 {¶ 35} In response to the employer's evidence, relator contends that he was never made aware that insubordination could be grounds for his termination. As such, relator contends that the employer did not establish the requirements of Louisiana-Pacific.
 {¶ 36} The record does not contain transcripts from the SHO's hearing in September 2005. However, it is apparent that relator, his supervisor, Ms. Szczerbiak, and the owner of the company were present at that hearing. Obviously, testimony was presented. Questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact-finder. Teece. Further, it is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission's decision. State ex rel. Pass v.C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373.
 {¶ 37} In the present case, the commission accepted the explanation provided by the employer and determined that the employer did have a written policy on insubordination. As such, the commission did not believe relator's assertion that he was *Page 15 
never informed of this revision to the employee handbook. Because a copy of the policy is in the evidence and relator signed a document in January 2004 with the understanding that the rules could change and that he would be bound by them, does constitute some evidence in support of the employer's argument. As such, the magistrate finds that there is some evidence in the record to support the voluntary abandonment underLouisiana-Pacific.
 {¶ 38} In the present case, the SHO also addressed relator's contention that he had an agreement with the employer concerning his restrictions and that the operation of the bulldozer violated that agreement. First, the SHO noted that relator was not able to present a copy of this written document. Second, the SHO noted that relator had failed to provide the employer with a copy of any restrictions from his treating physician. Third, the SHO reviewed the restrictions ultimately provided in June 2005, and concluded that the operation of a bulldozer was not outside of these restrictions. As such, the SHO disagreed with relator's contention that he was medically incapable of performing the task which he admitted that he refused to perform. The SHO found that this further weighed against relator's arguments.
 {¶ 39} Relator is correct to argue that the Supreme Court of Ohio has stated that when termination occurs subsequent to the industrial injury, it is essential for the commission to carefully examine the totality of the circumstances because of the great potential for abuse in permitting a simple allegation of misconduct to preclude an award of TTD compensation. State ex rel. Smith v. Superior's Brand Meats, Inc.
(1996), 76 Ohio St.3d 408. However, in the present case, the magistrate concludes that the commission did carefully scrutinize the facts in this case. As noted previously, relator was not able to *Page 16 
present a copy of the written agreement which he maintained existed. Further, the medical restrictions which relator ultimately provided did not prohibit him from utilizing foot controls or operating machinery. This dilutes relator's assertion that operating the bulldozer actually was outside his agreement with the employer. Relator simply has not demonstrated that the commission did not carefully scrutinize the totality of the circumstances in this case. Because the record does contain some evidence to support the determination that relator had voluntarily abandoned his employment, the magistrate finds that relator has not demonstrated that he is entitled to a writ of mandamus ordering the commission to vacate the September 2005 order.
 {¶ 40} Relator's second argument is that the commission abused its discretion by failing to exercise its continuing jurisdiction.
 {¶ 41} Pursuant to R.C. 4123.52, "[t]he jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified." In State exrel. B C Machine Co. v. Indus. Comm. (1992), 65 Ohio St.3d 538,541-542, the court examined the judicially-carved circumstances under which continuing jurisdiction may be exercised, and stated:
 R.C. 4123.52 contains a broad grant of authority. However, we are aware that the commission's continuing jurisdiction is not unlimited. See, e.g., State ex rel. Gatlin v. Yellow Freight System, Inc. (1985), 18 Ohio St.3d 246 * * * (commission has inherent power to reconsider its order for a reasonable period of time absent statutory or administrative restrictions); State ex rel. Cuyahoga Hts. Bd. of Edn. v. Johnston (1979), 58 Ohio St.2d 132 * * * (just cause for modification of a prior order includes new and changed conditions); State ex rel. Weimer *Page 17 v. Indus. Comm. (1980), 62 Ohio St.2d 159 * * * (continuing jurisdiction exists when prior order is clearly a mistake of fact); State ex rel. Kilgore v. Indus. Comm. (1930), 123 Ohio St. 164
* * (commission has continuing jurisdiction in cases involving fraud); State ex rel. Manns v. Indus. Comm. (1988), 39 Ohio St.3d 188 * * * (an error by an inferior tribunal is a sufficient reason to invoke continuing jurisdiction); and State ex rel. Saunders v. Metal Container Corp. (1990), 52 Ohio St.3d 85 * * (mistake must be "sufficient to invoke the continuing jurisdiction provisions of R.C. 4123.52"). Today, we expand the list set forth above and hold that the Industrial Commission has the authority pursuant to R.C. 4123.52 to modify a prior order that is clearly a mistake of law. * * *
 {¶ 42} In this mandamus action, relator contends that the evidence he presented demonstrates that the employer fraudulently misrepresented the situation to the commission. Specifically, relator alleges that the notes from the BWC representative clearly establish that his supervisor knew that he had restrictions and that he was terminated later than May 16, 2005, as the employer asserted.
 {¶ 43} In order to establish fraud, relator needed to establish the following elements: (1) a representation or, where it has a duty to disclose, a concealment of fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. See Burr v. Stark Cty. Bd. of Commrs. (1986),23 Ohio St.3d 69.
 {¶ 44} As noted in the findings of fact, two of the notations made following conversations between a representative of the BWC and Ms. Szczerbiak are arguably relevant. On May 9, 2005, the BWC representative spoke with Ms. Szczerbiak and she *Page 18 
indicated that relator had "been working [the] whole time, and they have him on restricted duty." Relator indicates that this statement is evidence that he had an agreement with his employer concerning his restrictions. While the statement clearly indicates that the employer was aware that relator had hurt his knee and had resulting discomfort which somewhat impaired his abilities, the statement does not establish that a written agreement existed. As such, while it is some evidence that the employer knew relator had sustained an injury, which the employer has never denied, it does not establish the existence of the written agreement. Relator also points to the May 18, 2005 conversation with Ms. Szczerbiak wherein she confirmed that relator had been off work since May 13, 2005, and that the employer had been attempting to accommodate his restrictions, but that relator was assigned a job which he indicated he was unable to perform. Ms. Szczerbiak specifically requested a written copy of relator's medical restrictions in order to determine if the job which relator refused to perform was within the restrictions. Again, relator contends that this proves the existence of the written agreement; however, it does not. What it does establish is that relator did not return to work after May 13, 2005 following his refusal to perform a job assigned to him. It further acknowledges that the reason relator gave for not performing that job was that he was physically unable to perform it. By asking for a written copy of relator's medical restrictions, this note seems to indicate that the employer was not aware of relator's restrictions. A copy of those restrictions was requested so that the employer could specifically determine whether or not relator had, in fact, been assigned a task which he was physically unable to do.
 {¶ 45} As the record indicates, the medical restrictions from Dr. Giovannone do not mention that relator was in any way restricted in his use of foot controls or to operative *Page 19 
machinery. As such, the medical restrictions which relator ultimately provided do not substantiate his claim that he was unable to perform the job assigned to him. The comment from Ms. Szczerbiak seems to indicate that, if relator's medical restrictions did in fact preclude him from performing that job, then relator may not have been terminated. While this is mere speculation, it is a possible conclusion. Credibility and the weight to be given evidence are clearly within the discretion of the commission as fact-finder and it is immaterial whether there is evidence which is greater in quantity and/or quality which supports a decision contrary to the commission's. In the present case, the magistrate finds that it was not an abuse of discretion for the commission to determine that relator had not met the burden of proving fraud and the commission did not abuse its discretion in refusing to exercise its continuing jurisdiction.
 {¶ 46} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in either denying his request for TTD compensation or in refusing to exercise its continuing jurisdiction and reconsider the matter and this court should deny relator's request for a writ of mandamus. *Page 1